OPINION
Appellant Robert Lenix, Sr. appeals from the August 5, 2005, Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights and granted permanent custody of Robert, Jr. and Robin Lenix to appellee Ashland County Department of Job and Family Services.[Hereinafter "ACDJFS"].
 STATEMENT OF FACTS AND THE CASE {¶ 1} The mother of the children, Nasra Lenix, is not a party to this appeal because she is no longer a party to this case. Specifically, Nasra Lenix has voluntarily surrendered all of her parental rights regarding each of the children.
 {¶ 2} These cases originally commenced with the filing of a Complaint in each case on March 28, 2003. The Complaint in each case alleged the children, Robert Lenix, Jr. and Robin Lenix, to be dependent children under Section 2151.04(C) of the Ohio Revised Code. The child, Robert Lenix, Jr. was born February 2, 1990, and therefore at the time of the filing of the Complaint he was thirteen years of age. At the time of the hearing held herein he was almost fifteen years of age. The child, Robin Lenix, was born March 14, 1988, and therefore at the time of the filing of the Complaint she was fifteen years of age. At the time of the hearing on the Motion for Permanent Custody she was more than sixteen years of age. The children's father is Robert Lenix, Sr.
 {¶ 3} The children had been removed from the home of their custodian, the maternal grandfather, on March 28, 2003, and by Judgment Entry filed January 10, 2004, both of the children were placed in the temporary legal custody of the ACDJFS. Both of the children have been in the temporary custody of the ACDJFS continuously from the time of their removal from the home of their custodian on March 28, 2003, up to the date of the filing of the Motion for Permanent Custody on November 29, 2004, a period of twenty (20) consecutive months. Both of the children have remained in the temporary custody of ACDJFS thereafter.
 {¶ 4} Both of the children were victimized in the home of their grandfather, specifically including that both had been subjected to pornography and pornographic materials over an extended period of time. Also, both of the children have been subjected to sexual abuse.
 {¶ 5} The child, Robin, presently lives in a foster home in Ashland County. She participates in counseling for the sexual abuse.
 {¶ 6} The child, Robert, presently resides in a therapeutic foster home in another county. A therapeutic foster home is one where the foster parents have additional, more specialized training and which is necessary for children who experience more problems, including more behavioral problems. The child, Robert requires a high level of supervision, requires ongoing and continual counseling, which includes counseling for sexual abuse, both as a victim and a perpetrator. The child, Robert, also needs psychiatric services and he is presently prescribed five separate medications, including for depression and ADHD.
 {¶ 7} At the time of the removal of the children on March 28, 2003, Robert Lenix, Sr. was incarcerated in a state penal institution and he remained incarcerated as of the time of the hearing.
 {¶ 8} After the removal of the children from their home the ACDJFS prepared and implemented a Case Plan, which was amended from time-to-time. The original goal of the Case Plan was reunification of the children with their mother, Nasra Lenix. Mrs. Lenix did work on the Case Plan goals for a period of time and did maintain contact with the children through visitation. Mrs. Lenix did not complete all of the Case Plan goals, however. The Case Plan did not contain requirements for Mr. Lenix because of his incarceration.
 {¶ 9} As indicated above, Nasra Lenix, in November, 2004, voluntarily surrendered permanent custody of the children, which terminated all of her parental rights, which was done by Judgment Entry filed December 17, 2004. At that time the Case Plan goals changed to an adoptive placement and ultimately adoption of the children. A permanency plan, although tentative, was prepared; again providing for an adoptive placement and subsequent adoption. Evidence presented indicated that there were prospects for adoption of the children, but no commitments at that time.
 {¶ 10} Mr. Robert Lenix, Sr., the father of the children, was convicted of the criminal offense of Murder, with a Gun Specification, in 1994. He was sentenced to fifteen years to life in prison. Mr. Lenix testified that he is first eligible for release on parole in May, 2007. It would only be speculation as to whether Mr. Lenix is likely to be released at that time and there was no evidence presented as to when he might be released if not in May, 2007.
 {¶ 11} Neither of the children have visited with Mr. Lenix since being placed in the temporary custody of the ACDJFS.
 {¶ 12} There was no evidence that Mr. Lenix, the father of the children, ever abused the children, physically or sexually, and there was nothing that Mr. Lenix did or failed to do directly that resulted in the removal of the children from the home of their custodian on March 28, 2003.
 {¶ 13} Both of the children have severe emotional problems. It was the opinion of the children's caseworker that the child, Robert, could not be successful in a less restrictive environment and she did acknowledge that there is no adoptive placement for Robert at the present time.
 {¶ 14} During the time that the children have been in the custody of the ACDJFS has made efforts to find a family placement for the children, but those efforts were not successful.
 {¶ 15} Mrs. Crooks, the caseworker, acknowledged that in the original Case Plan filed on or about September 22, 2003, the children could write to Mr. Lenix in prison "if appropriate." Mrs. Crooks concluded that it was not appropriate and the reasons given were that Mr. Lenix, in his attempted communication with the children, often talked about being part of their lives, which Mrs. Crooks determined to be unrealistic. Mrs. Crooks consulted with the children's counselor in an attempt to determine whether communications between the children and their father would be positive or negative for the children. The counselor recommended that communication between the children's father and the children by letters should not take place.
 {¶ 16} Mrs. Crooks, the children's caseworker, further acknowledged and conceded that if the Court grants the Motions for Permanent Custody in this case, that the children would almost certainly be placed in separate homes. Normally, it is beneficial for siblings to remain together and to grow up in the same home and with the same family. Often it is not in the best interests of children to be separated from their siblings. In this case, however, the caseworker was of the opinion that it would not be detrimental to the best interests of the children for them to be placed in separate homes because it had been determined that the child, Robert, had sexually abused his sister, Robin, and as a result the child, Robin, was not only dealing with problems caused by that sexual activity, but she did not want to live with or have contact with her brother.
 {¶ 17} Mrs. Crooks testified that as the ongoing caseworker for these children that, in her opinion, both of the children were in great need of stability; that both children needed long term specialized care; and that it was in the best interests of both children for the Court to grant permanent custody of the children to the ACDJFS. Mrs. Crooks was asked if the Department had considered a Planned Permanent Living Arrangement for the children which would allow the children to remain in the custody of the Department of Job and Family Services, but not terminate the parental rights of the father. While all options are generally considered by the Department, in this case Mrs. Crooks testified that both children want and desire what they describe as a "real family" and both children want and deserve permanency in their living arrangements. Therefore, Mrs. Crooks was of the opinion that a Planned Permanent Living Arrangement for either or both of the children was not in their best interests.
 {¶ 18} The evidence established that Mrs. Nasra Lenix, the mother of the children, was married to Mr. Robert Lenix, Sr. and, in fact, is still married to Mr. Lenix. Mr. and Mrs. Lenix resided in Cuyahoga County and were living together when the child, Robin, was born. The child, Robin, was approximately five years of age when Mr. Lenix went to prison. The Cuyahoga County Department of Job and Family Services had removed both of the children, that is, Robin and Robert, when Robin was approximately three years of age. Mr. Lenix testified that the reason for that removal were the conditions of the home at the time and he further testified that he complied with the Case Plan that had been prepared by the Cuyahoga County Department of Job and Family Services, but before the children could actually be returned he was convicted of the criminal offense of Murder and sent to prison. The child, Robert, was approximately two years of age when Mr. Lenix went to prison. Ultimately, both of the children were placed by the Cuyahoga County Department of Job and Family Services with their grandfather, with whom the children resided until the acts of the grandfather as described above resulted in the removal of the children in Ashland County.
 {¶ 19} Mrs. Lenix testified in this case that when she and Mr. Lenix lived together in Cuyahoga County that Mr. Lenix was involved with the children, and participated in their day-to-day lives. She testified further that Mr. Lenix provided for the children, as she described it "on and off," but she was clear that he spent time with the children and that he and both of the children were bonded.
 {¶ 20} While Mr. Lenix has been in prison Mrs. Lenix has maintained contact with him, including through letters and telephone calls. Mr. Lenix, for a period of time, did maintain contact with the children by letters and telephone conversations with them. This included during the first year that the children were in the temporary custody of the ACDJFS. These types of contacts occurred when the children were on visitations with their mother, Mrs. Lenix. Mrs. Lenix testified that the child, Robert, enjoyed the contacts and that while the child, Robin, on some occasions enjoyed the contacts, this was not always the case. These types of contacts stopped after the ACDJFS learned that they were occurring and apparently ordered them to cease. Mr. Lenix wrote letters to the children frequently, as much as four times per month. Before the children were placed in the temporary custody of the ACDJFS these letters were given to the children and, according to Mrs. Lenix, the children enjoyed receiving and reading them.
 {¶ 21} The evidence also established that Robert Lenix, Sr. sends money for the children, including for birthdays, holidays and whenever he is able to do so. Mr. Lenix attempts to send at least twenty-five per cent (25%) of his earnings for the children. Mr. Lenix's earnings are minimal due to his circumstances, that is, his incarceration.
 {¶ 22} Mrs. Lenix testified that she believes that Mr. Lenix can contribute to the well-being of the children, even though he is in prison. She did not specify the basis of that opinion. She did testify that she believes that Robert Lenix, Jr. could benefit by having a relationship with his father.
 {¶ 23} Evidence presented by Mr. Lenix confirmed that he does, in fact, send money for the children and that he has attempted to send money to the ACDJFS for the children.
 {¶ 24} Mr. Lenix is forty-one years of age and has no other children other than the two children which are the subject of this case. Mr. Lenix firmly believes and testified that he bonded with the children and he wants to maintain those bonds. He has been in prison for the last eleven (11) years and confirmed that he is initially eligible for parole in May, 2007. Mr. Lenix also testified that he spoke with the children by telephone and wrote them letters frequently during the time that he was in prison up to the time the children were removed by the ACDJFS. He further testified that both of the children would often write letters back to him. Mrs. Crooks, the children's caseworker, confirmed that since the children have been in the Department's custody, that Mr. Lenix has continued to write to them frequently as she is the one that receives those letters. Mr. Lenix also writes frequently to Mrs. Crooks. He often inquires about the well-being of the children and almost always includes letters addressed to the children and requests that those letters be passed along to the children. Mr. Lenix. has also completed programs, including parenting programs, while in prison and he has included proof of his participation in and completion of those programs in his correspondence to the Department. Mr. Lenix consistently expresses to the Department through his correspondence his fervent desire to be involved in the lives of his children.
 {¶ 25} Mrs. Crooks testified that she has not given Mr. Lenix's letters to the children and at one point in December, 2004, Mrs. Crooks wrote a letter to Mr. Lenix in which she told him that she was not forwarding the letters to the children. The children are aware that Mr. Lenix has been writing them letters and that those letters are being held by their caseworker. Apparently Mrs. Crooks has written back to Mr. Lenix on a number of occasions, but, according to Mr. Lenix, on only one of those occasions did she inform him that his letters were not being forwarded to the children.
 {¶ 26} Mr. Lenix has attempted to remain involved with the children to the only extent that he can. Mr. Lenix believes and testified that, in his opinion, he can be a positive influence on the children even though he is in prison. He believes that he can still be a father to the children, in his words, and that he can teach the children important lessons, including how to avoid the mistakes which he has made. He believes that he can continue to provide emotional support and advice to the children even though he is incarcerated.
 {¶ 27} Mr. Lenix is of the opinion that it is not in best interests of the children to grant permanent custody to the Ashland County Department of Job and Family Services and terminate his parental rights.
 {¶ 28} Appellant now raises the following assignment of error on appeal:
 {¶ 29} "I. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY FILED BY THE DEPARTMENT OF JOB AND FAMILY SERVICES, AND FINDING THAT IT WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO TERMINATE THE RIGHTS OF THE CHILDREN'S ONLY REMAINING PARENT AND SEVERING THE RELATIONSHIP, WHERE NO ADOPTIVE PLACEMENT WAS IN PLACE AT THE TIME OF THE HEARING, THE CHILDREN HAD LONG-TERM NEEDS WHICH WOULD MAKE ADOPTION DIFFICULT AND THEIR FATHER WAS THE ONLY CONTINUOUS, STABLE FORCE IN THE CHILDREN'S LIVES."
 I. {¶ 30} Appellant, in his sole assignment of error, argues that the trial court's findings that the children could not or should not be placed with appellant within a reasonable time and that the grant of permanent custody was in the children's' best interest were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 31} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 32} R.C. 2151.414(B) (1) addresses under what circumstances a trial court may grant permanent custody. Such statute provides as follows:
 {¶ 33} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 34} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 35} "(b) The child is abandoned.
 {¶ 36} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 37} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 38} In the case sub judice, the trial court found, in its August 5, 2005, findings of fact, that the children had been in the temporary custody of ACDJFS for 12 or more of the past consecutive 22 months and that the children cannot and should not be placed with appellant in a reasonable time. Those findings are alternate findings under R.C. 2151.414(B) (1). (R.C.2151.414(B)(1)(d) and (a) respectively) Either of those findings, if supported by the evidence, would have been sufficient in and of itself to base a grant of permanent custody pursuant to R.C.2151.414(B) (1).
 {¶ 39} Appellant does not appeal the trial court's finding that the children were in the temporary custody of ACDJFS for 12 or more of the past consecutive 22 months. Such a finding is enough to satisfy the requirements of R.C. 2151.414(B) (1). SeeIn re: Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101. However, because the trial court made a finding that the children should not or cannot be placed with appellant in a reasonable time this court shall review that finding.
 {¶ 40} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 41} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 42} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 43} "* * *
 {¶ 44} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 45} "* * *
 {¶ 46} "(16) Any other factor the court considers relevant."
 {¶ 47} As is stated above, appellant testified at the permanent custody hearing held November 29, 2004 that he has been incarcerated in a state penal institution since his conviction for murder with a gun specification. (T. at 53). Appellant received a sentence of fifteen years to life upon his conviction. (Id.). Appellant will be eligible for parole in May, 2007. (Id. at 70). However, parole is not guaranteed. (Id. at 53-54; 70; 119-120). In any event, the May, 2007 parole date is more than 18 months after the filing of the motion for permanent custody, and more than 18 months after the hearing. R.C. 2151.414(E) (12). This finding is sufficient to meet the first prong of a permanent custody determination pursuant to R.C. 2151.414(B) (1).
 {¶ 48} Based on the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that the two children could not or should not be placed with appellant within a reasonable time.
 {¶ 49} Appellant also contends that the trial court erred when it found that permanent custody was in the best interest of the children. In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 50} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 51} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 52} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 53} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 54} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 55} As previously noted, appellant testified that he has been incarcerated since 1994. (T. at 53). Appellant received a sentence of fifteen years to life upon his conviction. (Id.). Appellant will be eligible for parole in May, 2007. (Id. at 70). However, parole is not guaranteed. (Id. at 53-54; 70; 119-120).
 {¶ 56} Accordingly, clear and convincing evidence supports the trial court's finding. R.C. 2151.414(D) (5).
 {¶ 57} The children were approximately two and five years of age at the time appellant was sentenced to prison. (T. at 78). Both children had previously been removed from their father and mother's house by the Cuyahoga County Department of Jobs and Family Services in approximately 1992. (Id. at 78-79). Prior to the children being returned to the care of their mother, appellant was sent to prison. (Id. at 82). Appellant has been incarcerated for the past eleven years of the lives of his children. His sole means of contact has been through the telephone and letters.
 {¶ 58} Accordingly, clear and convincing evidence supports the trial court's finding. R.C. 2151.414(D) (1).
 {¶ 59} The trial court reviewed the report of the guardian ad litem. In his report the guardian ad litem reports that the daughter does not wish to have any contact with either her mother or her father. The son would like to maintain contact but does not necessarily desire to live with either of his parents. This evidence is unrefuted.
 {¶ 60} Accordingly, clear and convincing evidence supports the trial court's finding. R.C. 2151.414(D) (2).
 {¶ 61} As previously noted the trial court found, in its August 5, 2005, findings of fact that the children had been in the temporary custody of ACDJFS for 12 or more of the past consecutive 22 months. Appellant does not appeal the trial court's finding that the children were in the temporary custody of ACDJFS for 12 or more of the past consecutive 22 months.
 {¶ 62} Accordingly, clear and convincing evidence supports the trial court's finding. R.C. 2151.414(D) (3).
 {¶ 63} Appellant urges the trial court should have considered a planned permanent living arrangement as a final disposition for the children even though appellee requested permanent placement.
 {¶ 64} Pursuant to R.C. 2151.353(A)(J), a planned permanent living arrangement is appropriate if the trial court finds by clear and convincing evidence that it is in the best interest of the child and that one of the following conditions is met: (1.) The child because of physical, mental, or psychological problems or needs is unable to function in a family-like setting and must remain in residential or institutional care; (2.) The parents of the child have significant physical, mental, or psychological problems, and are unable to care for the child because of those problems, and adoption is not in the best interest of the child pursuant to R.C. 2151.414(D) and the child maintains a significant positive relationship with a parent or relative, and (3) the child is sixteen years old or older, and after being counseled on the permanent placement options available to him, is unwilling to accept or unable to adapt to a permanent placement.
 {¶ 65} In the case at bar, the trial court had the benefit of a Supplemental Guardian Ad Litem report which was filed February 8, 2005. This report was prepared to address appellant's request that the children be placed in a planned permanent living arrangement. The guardian spoke with the daughter who expressed her desire for a "fresh start" in a family setting. The guardian notes that the daughter will be nineteen years old at the time of appellant's parole hearing in 2007. The guardian notes that the son does desire to have a relationship with his father. The son will be seventeen years old in 2007.
 {¶ 66} The evidence in the case at bar indicates that the children understand the difference between foster placement and a permanent placement. (T. at 45). Both children have expressed a desire to become part of a family rather than remain in foster care. It should be noted that the son was fourteen years old at the time of the hearing. (T. at 8). The record reflects that appellant does not have any physical, mental, or psychological problems; rather he cannot care for his child because he is incarnated. Both children have severe emotional trauma. Although the trial court noted that the evidence is that the son could not be successful in a less restrictive environment and that at the present time there is no adoptive placement for him, the caseworker, guardian ad litem and the trial court each found that permanent custody was in the best interest of both children.
 {¶ 67} In short, upon our review of the record, we find that the trial court did not err in finding that it was in the best interest of the children to be placed in permanent custody of ACDJFS, rather than to be placed in a planned permanent living arrangement, and did not err in terminating appellant's parental rights.
 {¶ 68} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 69} Accordingly, the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.