**[Cite as *In re A.W.*, 2021-Ohio-3914.]**

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: A.W.                    :         APPEAL NO. C-210420
                                         TRIAL NO. F18-597Z
                               :

                               :         *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 3, 2021


*Treleven & Kingensmith LLC* and *John Treleven,* for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nichlas C. Varney*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Belinda S. Gullette*, Assistant Public Defender, Guardian ad Litem for A.W.

**MYERS, Presiding Judge.**

{¶1} Father appeals the Hamilton County Juvenile Court's judgment granting permanent custody of his child to the Hamilton County Department of Job and Family Services ("HCJFS"). The child's guardian ad litem ("GAL") and HCJFS ask this court to affirm the juvenile court's judgment.

{¶2} In April 2018, the juvenile court granted interim custody of ten-month-old A.W. to HCJFS after his mother was admitted to the hospital for mental-health and substance-abuse issues. HCJFS filed a complaint for temporary custody, naming father only by his first name, Tracy.

{¶3} In May 2018, HCJFS amended its complaint to name father by his full name, and another man, M.D., as alleged fathers of A.W. In June 2018, A.W. was adjudicated abused, neglected, and dependent, and mother agreed to his placement in the temporary custody of HCJFS.

{¶4} In December 2018, the magistrate conducted a review hearing, noting that father, who was in prison in Illinois, had contacted HCJFS to indicate his support of mother's reunification with A.W.

{¶5} In February 2020, HCJFS moved for permanent custody under R.C. 2151.413, naming three men, including father, M.D., and a third man as A.W.'s alleged fathers.

{¶6} In April 2020, M.D., who was also incarcerated, wrote to the court to request that an attorney be appointed for him. One of M.D.'s relatives filed a petition for custody of A.W., and M.D. submitted to genetic testing to determine if he was A.W.'s biological father.

{¶7} In October 2020, mother signed a permanent surrender of her parental rights. The matter was continued for the results of M.D.'s genetic test.

{¶8}   On December 11, 2020, the court ordered HCJFS to proceed with a motherless genetic test for father, because mother's whereabouts were unknown. The matter was continued for the status of the genetic tests.

{¶9}   On December 17, 2020, the court noted that father, who was still incarcerated in Illinois, had written to the court to request that an attorney be appointed for him. No such letter from father appears in the record. The court referred the matter to the public defender's office for the appointment of an attorney for father.

{¶10}   Counsel for father appeared at a pretrial hearing on January 6, 2021, and the matter was continued for the status of genetic testing for father and M.D.

{¶11}   On January 6, 2021, the court held a hearing at which counsel for father appeared. An HCJFS supervisor stated that genetic testing revealed that father was A.W.'s father. In its entry following that hearing, however, the court continued the matter to January 15, 2021, for the status of the genetic tests for M.D. and father.

{¶12}   At a hearing on January 15, 2021, counsel for father appeared. An HCJFS supervisor informed the court that genetic testing had revealed that father was A.W.'s father. In its entry, however, the court noted only that genetic testing revealed that M.D. was not A.W.'s father. The court dismissed the custody petition filed by M.D.'s relative, who indicated that she would no longer pursue her petition.

{¶13}   At the February 2021 hearing on HCJFS's permanent-custody motion, the HCJFS caseworker testified that A.W., who had remained in the same foster placement since April 2018, was well bonded to his foster parents, who wished to adopt A.W. should permanent custody be granted. In closing argument, counsel for

father indicated that father would like his sister to have custody of A.W. Counsel stated that he reached out to father's sister, but received no response.

{¶14} The magistrate determined, for the first time, that father was A.W.'s legal father and granted the permanent-custody motion. The juvenile court overruled father's objections to the magistrate's decision and awarded permanent custody of A.W. to HCJFS. This appeal followed.

{¶15} In his sole assignment of error, father argues that the juvenile court erred in granting permanent custody of A.W. to HCJFS.

{¶16} A juvenile court's determination on a permanent-custody motion must be supported by clear and convincing evidence. *In re B.J.*, 1st Dist. Hamilton Nos. C-200372 and C-200376, 2021-Ohio-373, ¶ 14. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. We must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re B.J.* at ¶ 14. In reviewing a challenge to the weight of the evidence, we review the record to determine if the juvenile court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed. *Id.*

{¶17} A juvenile court may grant permanent custody if it finds that permanent custody is in the child's best interest and that one of the conditions in R.C. 2151.414(B)(1) applies. *Id.* at ¶ 15. Here, father does not challenge the juvenile court's finding that the condition in R.C. 2151.414(B)(1)(d) was satisfied because the child was in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period.

{¶18} The juvenile court found that clear and convincing evidence supported the conclusion that permanent custody was in the child's best interest under R.C. 2151.414(D)(2), which provides:

If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to [R.C. 2151.415(D)].

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to [R.C. 2151.353(A)(5)].

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶19} The juvenile court found that each of the four conditions in R.C. 2151.414(D)(2) was satisfied. With respect to the condition in R.C. 2151.414(D)(2)(a), the court found that three of the factors in R.C. 2151.414(E) existed, specifically those in (E)(4), (10), and (12), even though only one of the factors would have sufficed. Those conditions are:

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(10) The parent has abandoned the child; and

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

R.C. 2151.414(E)(4), (10), and (12).

{¶20} With respect to the factor in R.C. 2151.414(E)(4), the juvenile court found that A.W.'s mother had executed a voluntary permanent surrender of her parental rights. The court also found that father had failed to have any contact with the child, which was supported by the caseworker's testimony that father had never met or spoken with A.W.

{¶21} Because of the same lack of contact, the juvenile court found that father had abandoned A.W., with respect to the factor in R.C. 2151.414(E)(10). A child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than 90 days. R.C. 2151.011. Nothing in the record rebuts the presumption of abandonment—the child was born in June 2017 and in the custody of HCJFS since April 2018, but father never had contact with the child. Father acknowledges that he was incarcerated during the entirety of the proceedings, and admits he received notice of the proceedings as early as October 2018. But he made no efforts to have contact with the child.

6

{¶22} The juvenile court found that the factor in R.C. 2151.414(E)(12) existed because father was incarcerated and would not be available to care for the child for at least 18 months after the filing of the permanent-custody motion or the dispositional hearing, finding that his prison sentence did not end until July 2025. This finding was supported by the caseworker's testimony that father was incarcerated on a narcotics-possession charge, and that he would go before the parole board in July 2022, but if denied parole, his projected release date would be July 2025. The permanent-custody motion was filed in February 2020, and the dispositional hearing occurred in February 2021. The court properly determined that father would not be available to care for the child within 18 months of either the filing of the motion or the dispositional hearing.

{¶23} Although father now asserts for the first time in his brief that he will be eligible for parole in March 2022, and not July 2022, he put on no evidence at the hearing to support this. Nevertheless, parole is not guaranteed. *In re Lenix,* 5th Dist. Ashland No. 05-COA-039, 2006-Ohio-1294, ¶ 47. Courts have rejected speculative release dates as establishing that a parent will be available to care for a child within the 18-month timeframe in R.C. 2151.414(E)(12). *Matters of J.F.*, 4th Dist. Nos. 21CA2 and 21CA3, 2021-Ohio-2713, ¶ 48; *Lenix* at ¶ 47.

{¶24} Father does not dispute that each of the conditions in R.C. 2151.414(D)(2)(b) (that the child has been in agency custody for more than two years and no longer qualifies for temporary custody) or R.C. 2151.414(D)(2)(c) (that the child does not qualify for a planned permanent living arrangement) existed.

{¶25} Father does not specifically dispute the juvenile court's finding that the condition in R.C. 2151.414(D)(2)(d) existed, that is, that prior to the dispositional hearing, no relative or other interested person filed a motion for custody. However,

7

to the extent that father asserts that the court should not have found that HCJFS made reasonable efforts to return A.W. to his biological family, we address that contention here.

{¶26} The term "reasonable efforts" describes "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." (Citation omitted.) *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28.

> No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*Id.* at ¶ 29.

{¶27} In particular, under R.C. 2151.419(A)(1), when a trial court removes a child from the child's home or continues the removal of a child from the child's home, the court must determine whether the agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, the statute applies only to various stages of the child-custody proceeding, "all of which occur prior to a decision transferring permanent custody to the state." *Id.* at ¶ 41. Although father asserts that the statute required

8

HCJFS "to seek reunification with the paternal family of A.W.," the statute requires only reasonable efforts to return a child to "the child's home."

{¶28} The Supreme Court of Ohio has held that the requirement to make reasonable efforts set forth in R.C. 2151.419(A)(1) does not apply to a hearing on an R.C. 2151.413 motion for permanent custody. *Id.* In addition, the court noted that under the circumstances identified in R.C. 2151.419(A)(2), "the law dispenses with the duty to make reasonable efforts to reunify the family." *Id.* at ¶ 34. One of those circumstances is when "[t]he parent from whom the child was removed has abandoned the child." *Id.*; R.C. 2151.419(A)(2)(d). Here, HCJFS was not required to make reasonable efforts to return the child to the child's home or, assuming for the sake of father's argument, to the child's family because, as the juvenile court found, father abandoned A.W. *See* R.C. 2151.414(A)(2)(d). Father does not specifically challenge that finding on appeal.

{¶29} In addition, father acknowledges that in this case, prior to the hearing on the permanent-custody motion, the juvenile court made several findings under R.C. 2151.419 that the agency had made reasonable efforts to return A.W. to his home. The court, therefore, was not required to make a reasonable-efforts finding in its entry granting permanent custody of the child to HCJFS. *See In re C.F.* at ¶ 42-43.

{¶30} Following our review of the record, we hold that the juvenile court's determination that A.W.'s best interest is served by a grant of permanent custody is supported by clear and convincing evidence, and is not against the manifest weight of the evidence. Therefore, we overrule father's assignment of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.